**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| BILAL SHAHID, individually and on behalf of all others similarly situated;<br><br>*Plaintiff*,<br><br>v.<br><br>STS OPERATING, INC. d/b/a SUNSOURCE, and SUNSOURCE BORROWER, LLC<br><br>*Defendants*. | Case No.:<br><br>**COMPLAINT-CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF'S CLASS ACTION COMPLAINT

Plaintiff Bilal Shahid ("Plaintiff"), individually and on behalf of all others similarly situated, by and through undersigned counsel, brings this Class Action Complaint against STS Operating, Inc. d/b/a SunSource and SunSource Borrower, LLC ("SunSource" or "Defendants"), to obtain damages, restitution, and injunctive relief for the Class, as defined below, from Defendants. Plaintiff makes the following allegations upon information and belief, except as to his own actions, the investigation of his counsel, and the facts that are a matter of public record.

## INTRODUCTION

1. Plaintiff and the proposed Class Members bring this class action lawsuit on behalf of all persons who entrusted Defendants with sensitive Personally Identifiable Information[1] ("PII" or "Private Information") that was impacted in a data breach (the "Data Breach" or the "Breach").

[1] Personally identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual.

2. Plaintiff's claims arise from Defendants' failure to properly secure and safeguard Private Information that was entrusted to it, and its accompanying responsibility to store and transfer that information.

3. Defendants are an Illinois-based industrial distributor and solutions provider for North America's industrial and high-tech operators with market-leading positions in Fluid Power, Fluid Process, Fluid Conveyance, Industrial Sales & Service, and Industrial Automation.[2]

4. Defendants had numerous statutory, regulatory, contractual, common law duties and obligations, including those based on their affirmative representations to Plaintiff and Class Members, to keep their Private Information confidential, safe, secure, and protected from unauthorized disclosure or access.

5. Upon information and belief, on or around April 30, 2026, Defendants experienced unauthorized access to its IT Network.[3] Since the Data Breach occurred, the notorious cybercriminal group, "PayoutsKing," has claimed responsibility for the Data Breach.[4]

6. Upon information and belief, PayoutsKing was able to infiltrate Defendants' IT Network and extract 700GB of data containing highly sensitive Private Information.[5]

7. Given that such a massive trove of personal information was downloaded from Defendant's information systems, apparently before it even knew what was happening, Defendant's cybersecurity posture is likely woefully inept, including a failure to implement

---

[2] SunSource, *About Us*, https://www.sun-source.com/About-Us (last visited July 2, 2026).

[3] *PayoutsKing Strikes SunSource, US Industrial Distributor*, DEXPOSE (April 30, 2026), https://www.dexpose.io/payoutsking-strikes-sunsource-us-industrial-distributor.

[4] *Id.*

[5] *SunSource*, BREACHSENSE (April 30, 2026), https://www.breachsense.com/breaches/sunsource-data-breach/.

appropriate intrusion and anomaly detection systems sufficient to even identify that a cyberattack was occurring in the first place.

8. Upon information and belief, at least the following types of Private Information were compromised as a result of the Data Breach: name, contact information, address, Social Security number, and date of birth.

9. Defendants failed to take precautions designed to keep individuals' Private Information secure.

10. Defendants owed Plaintiff and Class Members a duty to take all reasonable and necessary measures to keep the Private Information collected safe and secure from unauthorized access. Defendants solicited, collected, used, and derived a benefit from the Private Information, yet breached its duty by failing to implement or maintain adequate security practices.

11. The sensitive nature of the data exposed through the Data Breach signifies that Plaintiff and Class Members have suffered irreparable harm. Plaintiff and Class Members have lost the ability to control their private information and are subject to an increased risk of identity theft.

12. Defendants failed to use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information they maintained for Plaintiff and Class Members, causing the exposure of Plaintiff and Class Members' Private Information.

13. As a result of Defendants' inadequate digital security and notice process, Plaintiff and Class Members' Private Information was exposed to criminals. Plaintiff and the Class Members have suffered and will continue to suffer injuries including financial losses caused by misuse of their Private Information; the loss or diminished value of their Private Information as a

result of the Data Breach; lost time associated with detecting and preventing identity theft; and theft of personal and financial information.

14. Plaintiff brings this action on behalf of all persons whose Private Information was compromised as a result of Defendants' failure to: (i) adequately protect the Private Information of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendants' inadequate information security practices; (iii) effectively secure hardware containing protected Private Information using reasonable and adequate security procedures free of vulnerabilities and incidents; and (iv) timely notify Plaintiff and Class Members of the Data Breach. Defendants' conduct amounts to at least negligence and violates federal and state statutes.

15. Plaintiff brings this action individually and on behalf of a Nationwide Class of similarly situated individuals against Defendants for: negligence; negligence *per se*; breach of implied contract; and unjust enrichment, seeking actual and putative damages, with attorneys' fees, costs, and expenses, and appropriate injunctive and declaratory relief.

16. Plaintiff and Class Members seek to remedy these harms and prevent any future data compromise on behalf of himself, and all similarly situated persons whose personal data was compromised and stolen as a result of the Data Breach and who remain at risk due to Defendants' inadequate data security practices.

## PARTIES

17. Plaintiff is a citizen and resident of Naperville, Illinois.

18. Defendant STS Operating, Inc. d/b/a SunSource is a Delaware corporation that maintains its principal place of business at 2301 Windsor Court, Suite A., Addison, Illinois, 60101. Defendant STS Operating, Inc. d/b/a SunSource's registered agent is a CT Corporation System located at 208 S LaSalle Street, Suite 814, Chicago, Illinois, 60604.

19. Defendant SunSource Borrower, LLC is a Delaware limited liability company that maintains its principal place of business at 2301 Windsor Court, Suite A., Addison, Illinois, 60101. Defendant SunSource Borrower, LLC's registered agent is The Corporation Trust Company located at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801.

## JURISDICTION AND VENUE

20. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs. The number of Class Members is numerous, with many members of whom have different citizenship from Defendants, including an estimated 2,142 citizens of Texas.[6] Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

21. This Court has personal jurisdiction because Defendants maintain their principal place of business in this District, regularly conducts business in this District, and has sufficient minimum contacts in this District.

22. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events giving rise to this action occurred in this District. Moreover, Defendants are domiciled in this District and maintains Plaintiff's and proposed Class Members' Private Information in this District.

## FACTUAL ALLEGATIONS

### A. *Background on Defendants*

23. Defendant STS Operating, Inc. d/b/a SunSource is an Illinois-based industrial distributor and solutions provider for North America's industrial and high-tech operators with

[6] Office of the Atty. Gen. of Texas, *Data Security Breach Reports*, https://oag.my.site.com/datasecuritybreachreport/apex/DataSecurityReportsPage (Last visited July 1, 2026).

market-leading positions in Fluid Power, Fluid Process, Fluid Conveyance, Industrial Sales & Service, and Industrial Automation.[7]

24. Upon information and belief, Defendant SunSource Borrower, LLC is a subsidiary of Defendant STS Operating, Inc. d/b/a SunSource which acts as the financing arm in the SunSource's distribution operation.

25. Defendants require individuals to provide them with sensitive Private Information.

26. Defendants collected and stored Plaintiff's and the proposed Class Members' Private Information on its information technology computer systems.

27. Upon information and belief, Defendants made promises and representations to individuals, including Plaintiff and the proposed Class Members, that the Private Information collected from them would be kept safe and confidential, and that the privacy of that information would be maintained.

28. Plaintiff and the proposed Class Members provided their Private Information to Defendants with the reasonable expectation and on the mutual understanding that Defendants would comply with its obligations to keep such information confidential and secure from unauthorized access.

29. As a result of collecting and storing the Private Information of Plaintiff and the proposed Class Members for their own financial benefit, Defendants had a continuous duty to adopt and employ reasonable measures to protect Plaintiff and the proposed Class Members' Private Information from disclosure to third parties.

**B. *The Data Breach***

30. Upon information and belief, on or around April 30, 2026, Defendants experienced

---

[7] *Supra*, Note 2.

unauthorized access to its IT Network.[8] Since the Data Breach occurred, the notorious cybercriminal group PayoutsKing has claimed responsibility for the Data Breach.[9]

31. Upon information and belief, PayoutsKing was able to infiltrate Defendants' IT Network and extract 700GB of data containing highly sensitive Private Information.[10]

32. Upon information and belief, at least the following types of Private Information were compromised as a result of the Data Breach: name, contact information, address, Social Security number, and date of birth.

33. Defendants failed to take precautions designed to keep individuals' Private Information secure.

34. While Defendants sought to minimize the damage caused by the Data Breach, it cannot and has not denied that there was unauthorized access to the sensitive Private Information of Plaintiff and the proposed Class Members.

35. Individuals affected by the Data Breach are, and remain, at risk that their data will be sold or listed on the dark web and, ultimately, illegally used in the future.

**C. *Data Breaches Are Preventable***

36. Defendants could have prevented this Data Breach by, among other things, properly encrypting or otherwise protecting its equipment and computer files containing Private Information.

37. As explained by the Federal Bureau of Investigation, "[p]revention is the most

[8] *Supra*, Note 3.
[9] *Id.*
[10] *Supra*, Note 5.

effective defense."[11]

38. To prevent and detect cyber-attacks, Defendants could and should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.
- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.
- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.
- Configure firewalls to block access to known malicious IP addresses.
- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.
- Set anti-virus and anti-malware programs to conduct regular scans automatically.
- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.
- Configure access controls, including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.
- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.
- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData

[11] Fed. Bureau of Investigations, *How to Protect Your Networks from RANSOMWARE*, at 3, https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (last visited July 2, 2026.

folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.
- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.
- Execute operating system environments or specific programs in a virtualized environment.
- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[12]

39. To prevent and detect cyber-attacks or ransomware attacks, Defendants could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

**Secure internet-facing assets**

- Apply latest security updates
- Use threat and vulnerability management
- Perform regular audit; remove privileged credentials.

**Thoroughly investigate and remediate alerts**

- Prioritize and treat commodity malware infections as potential full compromise.

**Include IT Pros in security discussions**

- Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely.

**Build credential hygiene**

- Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords.

**Apply principle of least privilege**

- Monitor for adversarial activities
- Hunt for brute force attempts
- Monitor for cleanup of Event Logs

[12] *Id.* at 3-4.

- Analyze logon events.

**Harden infrastructure**

- Use Windows Defender Firewall
- Enable tamper protection
- Enable cloud-delivered protection
- Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[13]

40. Given that Defendants were storing the sensitive Private Information of numerous individuals, Defendants could and should have implemented all of the above measures to prevent and detect cyberattacks.

41. The occurrence of the Data Breach indicates that Defendants failed to adequately implement one or more of the above measures to prevent cyberattacks, resulting in the Data Breach and the exposure of the Private Information of, upon information and belief, millions of individuals, including that of Plaintiff and the proposed Class Members.

**D. *Defendants Failed to Comply with FTC Guidelines***

42. The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

43. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses. These guidelines note that businesses should protect the personal employee information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any

[13] *See Human-Operated Ransomware Attacks: A Preventable Disaster* (Mar 5, 2020), https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/.

security problems.[14]

44. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[15]

45. The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

46. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect employee data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential employee data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

47. These FTC enforcement actions include actions against companies, like Defendants.

48. Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice

[14] Fed. Trade Comm'n, *Protecting Personal Information: A Guide for Business* (2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.
[15] *Id.*

by businesses, such as Defendants, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also form part of the basis of Defendants' duty in this regard.

49. Defendants failed to properly implement basic data security practices.

50. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access individuals Private Information or to comply with applicable industry standards constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

51. Upon information and belief, Defendant was at all times fully aware of its obligation to protect the Private Information of individuals, Defendant was also aware of the significant repercussions that would result from its failure to do so. Accordingly, Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

**E. *Defendants Failed to Comply with Industry Standards.***

52. As noted above, experts studying cyber security routinely identify companies in possession of Private Information as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

53. Several best practices have been identified that, at a minimum, should be implemented by companies in possession of Private Information, like Defendants, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data and limiting which employees can access sensitive data.

Defendants failed to follow these industry's best practices, including a failure to implement multi-factor authentication.

54. Other best cybersecurity practices that are standard for companies include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points. Defendants failed to follow these cybersecurity best practices, including failure to train staff.

55. Defendants failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

56. These foregoing frameworks are existing and applicable industry standards for companies safeguarding individuals' data, and upon information and belief, Defendants failed to comply with at least one—or all—of these accepted standards, thereby opening the door to the threat actor and causing the Data Breach.

**F. *Common Injuries and Damages.***

57. As a result of Defendants' ineffective and inadequate data security practices, the Data Breach, and the foreseeable consequences of Private Information ending up in the possession of criminals, the risk of identity theft to the Plaintiff and the proposed Class Members has materialized and is imminent, and Plaintiff and the proposed Class Members have all sustained

actual injuries and damages, including: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) nominal damages; and (viii) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information.

**G. *The Harm Caused by the Data Breach Now and Going Forward.***

58. Victims of data breaches are susceptible to becoming victims of identity theft. The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 17 C.F.R. § 248.201(9). When "identity thieves have your personal information, they can drain your bank account, run up charges on your credit cards, open new utility accounts, or get medical treatment on your health insurance."[16]

59. The types of data that may have been accessed and compromised here can be used to perpetrate fraud and identity theft.

60. Plaintiff and the proposed Class Members face a substantial risk of identity theft given that their Private Information was compromised in the Data Breach.

61. Stolen Private Information is often trafficked on the "dark web," a heavily encrypted part of the Internet that is not accessible via traditional search engines. Law enforcement

---

[16] New York State Police, *Prevention and Preparedness*, https://troopers.ny.gov/prevention-and-preparedness.

has difficulty policing the "dark web" due to this encryption, which allows users and criminals to conceal their identities and online activity.

62. When malicious actors infiltrate companies and copy and exfiltrate the Private Information that those companies store, the stolen information often ends up on the dark web where malicious actors buy and sell that information for profit.[17]

63. For example, when the U.S. Department of Justice announced their seizure of AlphaBay—the largest online "dark market"—in 2017, AlphaBay had more than 350,000 listings, many of which concerned stolen or fraudulent documents that could be used to assume another person's identity."[18] Marketplaces similar to the now-defunct AlphaBay continue to be "awash with [PII] belonging to victims from countries all over the world."[19]

64. PII remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[20] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[21]

65. According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses in

---

[17] *Shining a Light on the Dark Web with Identity Monitoring*, IDENTITYFORCE (Feb. 1, 2020) https://www.identityforce.com/blog/shining-light-dark-web-identity-monitoring.

[18] *Stolen PII & Ramifications: Identity Theft and Fraud on the Dark Web*, ARMOR (April 3, 2018), https://res.armor.com/resources/blog/stolen-pii-ramifications-identity-theft-fraud-dark-web/.

[19] *Id.*

[20] *Id.*

[21] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), https://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft.

2019, resulting in more than $3.5 billion in losses to individuals and business victims.[22]

66. Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good."[23] Defendants did not rapidly report to Plaintiff and the proposed Class Members that their Private Information had been stolen.

67. As a result of the Data Breach, the Private Information of Plaintiff and the proposed Class Members has been exposed to criminals for misuse. The injuries suffered by Plaintiff and the proposed Class Members, or likely to be suffered as a direct result of Defendants' Data Breach, include: (a) theft of their Private Information; (b) costs associated with the detection and prevention of identity theft; (c) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the consequences of this Breach; (d) invasion of privacy; (e) the emotional distress, stress, nuisance, and annoyance of responding to, and resulting from, the Data Breach; (f) the actual and/or imminent injury arising from actual and/or potential fraud and identity theft resulting from their personal data being placed in the hands of the ill-intentioned hackers and/or criminals; (g) damage to and diminution in value of their personal data entrusted to Defendants with the mutual understanding that Defendants would safeguard their Private Information against theft and not allow access to and misuse of their personal data by any unauthorized third party; and (h) the continued risk to their Private Information, which remains in the possession of Defendants, and which is subject to further injurious breaches so long as Defendants fails to undertake appropriate and adequate measures to protect Plaintiff and the proposed Class Members' Private Information.

---

[22] Fed. Bureau of Investigations, *2019 Internet Crime Report Released* (Feb. 11, 2020) https://www.fbi.gov/news/stories/2019-internet-crime-report-released-021120.
[23] *Id.*

68. In addition to a remedy for economic harm, Plaintiff and the proposed Class Members maintain an interest in ensuring that their Private Information is secure, remains secure, and is not subject to further misappropriation and theft.

69. Defendants disregarded the rights of Plaintiff and the proposed Class Members by (a) intentionally, wilfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that its network servers, and those belonging to its third-party vendors, were protected against unauthorized intrusions; (b) failing to disclose that they did not have adequately robust security protocols and training practices in place to safeguard Plaintiff and the proposed Class Members' Private Information; (c) failing to take standard and reasonably available steps to prevent the Data Breach; (d) concealing the existence and extent of the Data Breach for an unreasonable duration of time; and (e) failing to provide Plaintiff and the proposed Class Members prompt and accurate notice of the Data Breach.

70. The actual and adverse effects to Plaintiff and the proposed Class Members, including the imminent, immediate, and continuing increased risk of harm for identity theft, identity fraud and/or medical fraud directly or proximately caused by Defendants wrongful actions and/or inaction and the resulting Data Breach require Plaintiff and the proposed Class Members to take affirmative acts to recover their peace of mind and personal security including, without limitation, purchasing credit reporting services, purchasing credit monitoring and/or internet monitoring services, frequently obtaining, purchasing and reviewing credit reports, bank statements, and other similar information, instituting and/or removing credit freezes and/or closing or modifying financial accounts, for which there is a financial and temporal cost. Plaintiff and the proposed Class Members have suffered, and will continue to suffer, such damages for the foreseeable future.

**H. *Plaintiff's Experience***

71. Plaintiff is a former employee of Defendants from March 2025 to May 2026.

72. Defendants obtained Plaintiff's PII/PHI in the course of its regular business operations of hiring employees.

73. In order to obtain employment from Defendants, Plaintiff was required to provide his Private Information to Defendant, including among other things, his name, contact information, Social Security number, a copy of his Driver's License, a copy of his Passport, and his banking information.

74. Defendants were in possession of Plaintiff's Private Information before, during and after the Data Breach.

75. Plaintiff is very careful about sharing his sensitive Private Information. Plaintiff stores any documents containing his Private Information in a safe and secure location. He has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source. Plaintiff would not have entrusted his Private Information to Defendants had he known of Defendants' lax data security policies.

76. Plaintiff trusted Defendants would use reasonable measures to protect his Private Information according to Defendants' internal policies, as well as state and federal law. Defendants obtained and continue to maintain Plaintiff's Private Information and has a continuing legal duty and obligation to protect that Private Information from unauthorized access and disclosure.

77. Plaintiff reasonably understood and expected that Defendants would safeguard his Private Information and timely and adequately notify him in the event of a data breach. Plaintiff would not have allowed Defendants, or anyone in Defendants' position, to maintain his Private Information if he believed that Defendants would fail to implement reasonable and industry

standard practices to safeguard that information from unauthorized access.

78. Plaintiff greatly values his privacy and Private Information and takes reasonable steps to maintain the confidentiality of his Private Information. Plaintiff is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

79. Plaintiff stores all documents containing Private Information in a secure location and destroys any documents he receives in the mail that contain any Private Information or that may contain any information that could otherwise be used to compromise his identity and credit card accounts. Moreover, he diligently chooses unique usernames and passwords for his various online accounts.

80. As a result of the Data Breach, Plaintiff has spent considerable time researching the Data Breach, reviewing his bank accounts, monitoring his credit report, changing his passwords and other necessary mitigation efforts. This is valuable time that Plaintiff spent at that he otherwise would have spent on other activities, including but not limited to work and/or recreation.

81. The Data Breach has caused Plaintiff to suffer fear, anxiety, and stress. This has been compounded by the fact that after the Data Breach occurred, Plaintiff experienced a significant uptick in spam text messages, calls, and emails.

82. Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. In addition, Plaintiff will continue to be at present and continued increased risk of identity theft and fraud for years to come.

83. Plaintiff has a continuing interest in ensuring that his Private Information, which upon information and belief, remains in Defendants' possession, is protected and safeguarded from future breaches.

84. As a direct and traceable result of the Data Breach, Plaintiff suffered actual injury and damages after his Private Information was compromised and stolen in the Data Breach, including, but not limited to: (a) lost time and money related to monitoring his accounts and credit reports for fraudulent activity; (b) loss of privacy due to his Private Information being accessed and stolen by cybercriminals; (c) loss of the benefit of the bargain because Defendant did not adequately protect his Private Information; (d) emotional distress because identity thieves now possess his sensitive information; (e) imminent and impending injury arising from the increased risk of fraud and identity theft now that his Private Information has been stolen and likely published on the dark web; (f) diminution in the value of his Private Information, a form of intangible property that Defendant obtained from Plaintiff; and (g) other economic and non-economic harm.

## CLASS ALLEGATIONS

85. Plaintiff brings this class action, individually and on behalf of the following Nationwide Class:

> All persons in the United States who were impacted by the Data Breach publicly announced by Defendant (the "Class").

86. Specifically excluded from the Class are Defendants, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, principals, servants, partners, joint venturers, or entities controlled by Defendants, and its, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or its officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

87. Plaintiff reserves the right to amend the Class definitions above if further investigation and/or discovery reveals that the Class should be expanded, narrowed, divided into subclasses, or otherwise modified in any way.

88. This action may be certified as a class action because it satisfies the numerosity,

commonality, typicality, adequacy, and superiority requirements therein.

89. Numerosity: The proposed Class Members are so numerous that joinder of all proposed Class Members is impracticable. Upon information and belief, the proposed Class includes thousands of individuals.

90. Typicality of Claims: Plaintiff's claims are typical of those of other proposed Class Members because Plaintiff, like the unnamed Class, had his Private Information compromised as a result of the Data Breach. Plaintiff is a member of the proposed Class, and his claims are typical of the claims of the proposed Class Members. The harm suffered by Plaintiff is similar to the harm suffered by all other proposed Class Members, which was caused by the same misconduct by Defendants.

91. Adequacy of Representation: Plaintiff will fairly and adequately represent and protect the interests of the proposed Class. Plaintiff has no interests antagonistic to, nor in conflict with, the proposed Class. Plaintiff has retained competent counsel who are experienced in consumer and commercial class action litigation and who will prosecute this action vigorously.

92. Superiority: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by individual proposed Class Members are relatively small, the expense and burden of individual litigation make it impossible for individual proposed Class Members to seek redress for the wrongful conduct asserted herein. If Class treatment of these claims is not available, Defendants will likely continue their wrongful conduct, will unjustly retain improperly obtained revenues, or will otherwise escape liability for their wrongdoing as asserted herein.

93. Predominant Common Questions: The claims of all proposed Class Members present common questions of law or fact, which predominate over any questions affecting only

individual proposed Class Members, including:

a. Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach.

b. Whether Defendants' data security systems, and those belonging to its third-party vendors, prior to and during the Data Breach complied with applicable data security laws and regulations.

c. Whether Defendants' storage of Plaintiff and proposed Class Member's Private Information was done in a negligent manner.

d. Whether Defendants had a duty to protect and safeguard Plaintiff and proposed Class Members' Private Information.

e. Whether Defendants' conduct was negligent.

f. Whether Defendants' conduct violated Plaintiff and proposed Class Members' privacy.

g. Whether Defendants' conduct violated the statutes as set forth herein.

h. Whether Defendants took sufficient steps to secure Plaintiff and proposed Class Members' Private Information.

i. Whether Defendants were unjustly enriched; and

j. The nature of relief, including damages and equitable relief, to which Plaintiff and proposed Class Members are entitled.

94. Information concerning Defendants' policies are available from Defendants' records.

95. Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action

96. The prosecution of separate actions by individual members of the proposed Class would run the risk of inconsistent or varying adjudications and establish incompatible standards of conduct for Defendants. Prosecution as a class action will eliminate the possibility of repetitious and inefficient litigation.

97. Given that Defendants have not indicated any changes to their conduct or security measures, monetary damages are insufficient and there is no complete and adequate remedy at law.

## CAUSES OF ACTION
## COUNT I
## NEGLIGENCE
**(On Behalf of Plaintiff and the proposed Class)**

98. Plaintiff incorporates by reference and re-alleges the above paragraphs as though fully set forth herein.

99. Plaintiff brings this claim individually and on behalf of the proposed Class Members.

100. Defendants knowingly collected, came into possession of, and maintained Plaintiff and proposed Class Members' Private Information, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

101. Defendants had a duty to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiff and proposed Class Members' Private Information.

102. Defendants had, and continues to have, a duty to timely disclose that Plaintiff and proposed Class Members' Private Information within their possession was compromised and

precisely the types of information that were compromised.

103. Defendants owed a duty of care to Plaintiff and proposed Class Members to provide data security consistent with industry standards, applicable standards of care from statutory authority like, Section 5 of the FTC Act, and other requirements discussed herein, and to ensure that its systems and networks, those belonging to its third-party vendors, and the personnel responsible for them, adequately protected individuals' Private Information.

104. Defendants duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendants and Plaintiff and proposed Class Members. Defendants were in a position to ensure that its systems, and those belonging to its third-party vendors were sufficient to protect against the foreseeable risk of harm to Plaintiff and Class Members from a data breach.

105. Defendants' duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendants are bound by industry standards to protect confidential Private Information.

106. Defendants breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff and proposed Class Members' Private Information.

107. The specific negligent acts and omissions committed by Defendants include, but are not limited to, the following:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff and proposed Class Members' Private Information;

b. Failing to adequately monitor the security of their networks and systems; and

c. Failing to periodically ensure that its computer systems and networks had plans in place to maintain reasonable data security safeguards.

108. Defendants, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and proposed Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff and proposed Class Members' Private Information within Defendants' possession.

109. Defendants, through their actions and/or omissions, unlawfully breached its duty to Plaintiff and proposed Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiff and proposed Class Members' Private Information.

110. Defendants, through their actions and/or omissions, unlawfully breached their duty to timely disclose to Plaintiff and proposed Class Members that the Private Information within Defendants' possession might have been compromised and precisely the type of information compromised.

111. Defendants breached the duties set forth in 15 U.S.C. § 45, the FTC guidelines, the National Institute of Standards and Technology's Framework for Improving Critical Infrastructure Cybersecurity, and other industry guidelines. In violation of 15 U.S.C. § 45, Defendant failed to implement proper data security procedures to adequately and reasonably protect Plaintiff and Class Members' Private Information. In violation of the FTC guidelines, *inter alia,* Defendants did not protect the Private Information it keeps; failed to properly dispose of personal information that was no longer needed; failed to encrypt information stored on computer networks; lacked the requisite understanding of its networks' vulnerabilities; and failed to implement policies to correct security issues.

112. It was foreseeable that Defendants' failure to use reasonable measures to protect Plaintiff and proposed Class Members' Private Information would result in injury to Plaintiff and proposed Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches.

113. It was foreseeable that the failure to adequately safeguard Plaintiff and proposed Class Members' Private Information would result in injuries to Plaintiff and proposed Class Members.

114. Defendants' breach of duties owed to Plaintiff and proposed Class Members caused Plaintiff and proposed Class Members' Private Information to be compromised.

115. But for Defendants' negligent conduct and breach of the above-described duties owed to Plaintiff and proposed Class Members, their Private Information would not have been compromised.

116. As a result of Defendants' failure to timely notify Plaintiff and proposed Class Members that their Private Information had been compromised, Plaintiff and proposed Class Members are unable to take the necessary precautions to mitigate damages by preventing future fraud.

117. As a result of Defendants' negligence and breach of duties, Plaintiff and proposed Class Members are in danger of imminent harm in that their Private Information, which is still in the possession of third parties, will be used for fraudulent purposes, and Plaintiff and proposed Class Members have and will suffer damages including: a substantial increase in the likelihood of identity theft; the compromise, publication, and theft of their personal information; loss of time and costs associated with the prevention, detection, and recovery from unauthorized use of their personal information; the continued risk to their personal information; future costs in terms of time,

effort, and money that will be required to prevent, detect, and repair the impact of the personal information compromised as a result of the Data Breach; and overpayment for the services or products that were received without adequate data security.

**COUNT II**
**NEGLIGENCE**
***PER SE***
**(On Behalf of Plaintiff and the proposed Class)**

118. Plaintiff incorporates by reference and re-alleges the above paragraphs as though fully set forth herein.

119. Section 5 of the FTC Act, 15 U.S.C. 45, prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by Defendants of failing to use reasonable measures to protect Plaintiff and proposed Class Members' Private Information. Various FTC publications and orders also form the basis of Defendant's duty.

120. Defendants violated Section 5 of the FTC Act (and similar state statutes) by failing to use reasonable measures to protect Plaintiff and proposed Class Members' Private Information and by failing to comply with industry standards.

121. Defendants' conduct was particularly unreasonable given the nature and amount of Private Information obtained and stored and the foreseeable consequences of a data breach on Defendants' systems, or those belonging to Defendants' third-party vendors.

122. Plaintiff and proposed Class Members are consumers within the class of persons Section 5 of the FTC Act (and similar state statutes) were intended to protect.

123. Moreover, the harm that has occurred is the type of harm the FTC Act (and similar state statutes) was intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of their failure to employ reasonable data security

measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and proposed Class Members.

124. As a result of Defendants' negligence *per se*, Plaintiff and proposed Class Members have been harmed and have suffered damages including, but not limited to: damages arising from identity theft and fraud; out-of-pocket expenses associated with procuring identity protection and restoration services; increased risk of future identity theft and fraud, and the costs associated therewith; and time spent monitoring, addressing, and correcting the current and future consequences of the Data Breach.

**COUNT III**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the proposed Class)**

125. Plaintiff incorporates by reference and re-alleges the above paragraphs as though fully set forth herein.

126. Upon information and belief, Defendants solicited, collected, received, stored, and maintained Plaintiff and proposed Class Members' Private Information, as part of Defendants' regular business practices.

127. Plaintiff and proposed Class Members were required to provide their Private Information to Defendants in order to receive employment, services and products. Plaintiff and proposed Class Members paid money, or money was paid on their behalf, to Defendants, in exchange for such employment, services and products.

128. Defendants solicited and accepted possession of Plaintiff and proposed Class Members' Private Information for the purpose of providing services and products to Plaintiff and proposed Class Members.

129. In delivering, directly or indirectly, their Private Information to Defendants and paying for employment, services or products, Plaintiff and proposed Class Members intended and

understood that Defendants would adequately safeguard their Private Information.

130. Plaintiff and proposed Class Members reasonably expected that the Private Information they entrusted to Defendants, in order to receive employment, services and products, would remain confidential and would not be shared or disclosed to criminal third parties.

131. Plaintiff and Defendants had a mutual understanding that Defendants would implement and maintain adequate and reasonable data security practices and procedures to protect Plaintiff and proposed Class Members' sensitive Private Information. Plaintiff and Defendants also shared an expectation and understanding that Defendants would not share or disclose, whether intentionally or unintentionally, the sensitive Private Information in its possession and control.

132. Based on Defendants' representations, legal obligations, and acceptance of Plaintiff and proposed Class Members' Private Information, Defendants had a duty to safeguard the Private Information in its possession through the use of reasonable data security practices.

133. When Plaintiff and proposed Class Members paid or were paid by Defendants, either directly or indirectly, in exchange for employment, services and products, they entered into implied contracts with Defendants.

134. Defendants entered into implied contracts with Plaintiff and the proposed Class under which Defendants agreed to comply with its statutory and common law duties to safeguard and protect Plaintiff and proposed Class Members' Private Information and to timely notify Plaintiff and proposed Class Members of a data breach.

135. The implied promise of confidentiality includes consideration beyond those pre-existing duties owed under Section 5 of the FTC Act, and other state and federal regulations. The additional consideration included implied promises to take adequate steps to comply with specific industry data security standards and FTC guidelines on data security.

136. The implied promises include, but are not limited to: (i) taking steps to ensure that any agents, contractors, or vendors granted access to Private Information protect the confidentiality of that information; (ii) taking steps to ensure that Private Information in the possession and control of Defendants, its agents, and/or vendors is restricted and limited to authorized purposes; (iii) restricting access to qualified and trained personnel; (iv) designing and implementing appropriate retention policies to protect Private Information from unauthorized access and disclosure; (v) applying or requiring proper encryption of Private Information; (vi) requiring multifactor authentication for access to Private Information; and (vii) other steps necessary to protect against foreseeable data breaches.

137. Plaintiff and proposed Class Members would not have entrusted their Private Information to Defendants in the absence of such implied contracts.

138. Defendants recognized that Plaintiff and proposed Class Members' Private Information is highly sensitive and must be protected, and that such protection was of material importance to Plaintiff and proposed Class Members.

139. Had Defendants disclosed to Plaintiff and proposed Class Members that it did not have adequate data security practices to secure Private Information, Plaintiff and proposed Class Members would not have provided their Private Information to Defendants.

140. Plaintiff and proposed Class Members fully performed their obligations under the implied contracts with Defendants.

141. Defendants breached the implied contracts with Plaintiff and proposed Class Members by failing to safeguard Plaintiff and proposed Class Members' Private Information and by failing to provide timely and accurate notice of the Data Breach.

142. As a direct and proximate result of Defendants' breach of the implied contracts,

Plaintiff and proposed Class Members have suffered damages, including foreseeable consequential damages that Defendants knew about when it solicited and collected Plaintiff and proposed Class Members' Private Information.

143. Plaintiff and the proposed Class have suffered injuries as described herein and are entitled to actual and punitive damages, statutory damages, and reasonable attorneys' fees and costs, in an amount to be proven at trial.

**COUNT IV**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the proposed Class)**

144. Plaintiff incorporates by reference and re-alleges the above paragraphs as though fully set forth herein.

145. Upon information and belief, Defendants fund their data security measures entirely from its general revenues, including from money it receives as a result of Plaintiff and proposed Class Members' employment or purchase of services and products.

146. As such, a portion of the revenue was intended to be used to provide a reasonable level of data security, and the amount of the portion of each payment allocated to data security is known to Defendants.

147. There is a direct nexus between money paid to Defendants and the requirement that Defendants keep Plaintiff and proposed Class Members' Private Information confidential and protected from unauthorized access and disclosure.

148. Protecting the Private Information of Plaintiff and proposed Class Members is integral to Defendants' businesses. Without such Private Information, Defendants would be unable to provide the services and products comprising their core operations.

149. Plaintiff and proposed Class Members' Private Information has monetary value.

150. Plaintiff and proposed Class Members directly and indirectly conferred a monetary

benefit on Defendants. They indirectly conferred a monetary benefit by purchasing services or products from Defendants, or having wages withheld, from which Defendants received compensation that included funds allocated to data security. Plaintiff and proposed Class Members directly conferred a monetary benefit by supplying their Private Information, from which Defendants derive its business and which should have been protected with adequate data security.

151. Defendants solicited, collected, received, stored, maintained, and shared Plaintiff and proposed Class Members' Private Information and, as such, had direct knowledge of the monetary benefits conferred upon them by Plaintiff and the proposed Class. Defendants profited from these transactions and used Plaintiff and proposed Class Members' Private Information for business purposes.

152. Defendants appreciated that a monetary benefit was being conferred upon it by Plaintiff and proposed Class Members and accepted that benefit.

153. Under the facts and circumstances alleged herein, it is inequitable for Defendants to retain those benefits without payment of their value.

154. Defendants enriched itself by saving costs they reasonably should have expended on data security measures to secure Plaintiff and proposed Class Members' Private Information.

155. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendants instead calculated to increase its own profits at the expense of Plaintiff and proposed Class Members by utilizing cheaper and ineffective security measures. Plaintiff and proposed Class Members suffered as a direct and proximate result of Defendants' decision to prioritize profits over adequate data security.

156. Under principles of equity and good conscience, Defendants should not be permitted to retain the monetary benefits belonging to Plaintiff and proposed Class Members

because Defendants failed to implement appropriate data management and security measures.

157. Defendants acquired Plaintiff and proposed Class Members' Private Information through inequitable means by failing to disclose its inadequate data security practices, as previously alleged.

158. If Plaintiff and proposed Class Members had known that Defendants had not adequately secured their Private Information, they would not have allowed Defendants to collect that information.

159. Plaintiff and proposed Class Members have no adequate remedy at law.

160. As a direct and proximate result of Defendants' conduct, Plaintiff and proposed Class Members have suffered or will suffer injury, including, but not limited to: actual identity theft and fraud; loss of the opportunity to control how their Private Information is used; the compromise, publication, and/or theft of their Private Information; out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, fraud, and/or unauthorized use of their Private Information; lost time and opportunity costs associated with efforts to mitigate the actual and future consequences of the Data Breach; the continued risk to their Private Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information; and future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Data Breach for the remainder of the lives of Plaintiff and proposed Class Members.

161. As a direct and proximate result of Defendants' conduct, Plaintiff and proposed Class Members have suffered and will continue to suffer other forms of injury and harm.

162. Defendants should be compelled to disgorge into a common fund or constructive

trust, for the benefit of Plaintiff and proposed Class Members, all gains unjustly received.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants as follows:

(a) For an order determining that this action is properly brought as a class action and certifying Plaintiff as the representative of the proposed Class and his counsel as Class Counsel.

(b) For an order declaring that Defendants' conduct violates the laws referenced herein.

(c) For an order finding in favor of Plaintiff and the proposed Class on all counts asserted herein.

(d) For damages in amounts to be determined by the Court and/or jury.

(e) For an award of statutory damages or penalties to the extent available.

(f) For pre-judgment interest on all amounts awarded.

(g) For an order of restitution and all other forms of monetary relief; and

(h) Such other and further relief as this Court deems necessary and appropriate.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

Dated: July 2, 2026

By: */s/ Jeff Ostrow*
Jeff Ostrow
**KOPELOWITZ OSTROW P.A.**
One W Las Olas Blvd
Suite 500
Fort Lauderdale, FL 33301
Tel: 954.323.4200
ostrow@kolawyers.com

J. Gerard Stranch, IV*
Grayson Wells*
Miles A. McDowell*
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Ave., Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
gwells@stranchlaw.com
gstranch@stranchlaw.com

*Counsel for Plaintiff and the Proposed Class*

* Pro Hac Vice Forthcoming

*Attorney for Plaintiff and the Proposed Class*